**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) ) |
| vs. | ) No.  CR 17-1764-001-TUC-CKJ ) |
| Placido Villa-Luna, | ) **ORDER** ) |
| Defendant. | ) ) |

Pending before the Court is the pro se Motion for Compassionate Release and/or Reduction of Sentence (Doc. 574) filed by Placido Villa-Luna ("Villa-Luna").   The Federal Public Defender filed a Notice RE:  Pro Se Filing, stating it will not be filing a supplemental memorandum.  The government has filed an opposition (Doc. 578) and the United States Probation Office has filed a Memorandum RE:   Retroactive Criminal History Amendment of Chapter Four Status Points and Zero Point Offenders - Ineligible (Doc. 579).

*Procedural Background*

The factual basis as set forth in the plea agreement provides:

From a time unknown, to on or about June 12, 2017, at or near various locations, in the District of Arizona, Placido Villa-Luna ("Villa-Luna") did knowingly conspire with Susana Leon-Quintero ("Leon-Quintero"), Shane Valisto Havier ("Havier"), Darin Arlo Antone ("Antone"), Enrique Quintero-Cecena ("Quintero-Cecena") and other persons known and unknown to possess with intent to distribute 1165 kilograms of marijuana.

Over the course of approximately 18 months, Villa-Luna communicated with Leon-Quintero and others regarding several shipments of marijuana, totaling 1165 kilograms, which were to be imported, picked up, transported, and delivered further into the United States.   Leon-Quintero would then communicate with several

1  co-conspirators, including but not limited to Havier and Antone, to coordinate and
2  recruit drivers and stash house operators to move the marijuana further into the United
   States.

3  After the marijuana shipments successfully reached their destination, proceeds from
   the, transportation and sale were funneled through Bank of America and Wells Fargo
4  accounts operated by Leon-Quintero, all in an effort to conceal and disguise the
   nature, location, source ownership and control of the marijuana proceeds.  More
5  specifically, Quintero-Cecena and Villa-Luna communicated with Leon-Quintero
   regarding deposits made from drugs proceeds and directed Leon-Quintero to
6  withdrawal the funds and pay other members of the organization.

7  Plea Agreement (Doc. 207, p. 8).  Villa-Luna agreed to "plead guilty to Counts 1 and 19 of

8  the Indictment, which charge[d Villa-Luna] with felony violations of 21 U.S.C. §§ 846 and

9  841(a)(l) and (b)(1)(A)(vii), Conspiracy to Possess with Intent to Distribute Marijuana and

10 18 U.S.C. § 1956(h), Conspiracy to Launder Monetary Instruments."  *Id*. at 1.

11  The plea agreement also provided:

12  Provided [Villa-Luna] receives a sentence in accordance with this fast-track plea
    agreement, [Villa-Luna] waives . . . any right to file a motion for modification of
13  sentence, including under Title 18, United States Code, Section 3582(c). [Villa-Luna]
    acknowledges that this waiver shall result in the dismissal of any appeal or collateral
14  attack the defendant might file challenging his/her conviction or sentence in this case.
    If the defendant files a notice of appeal or a habeas petition, notwithstanding this
15  agreement, [Villa-Luna] agrees that this case shall, upon motion of the government,
    be remanded to the district court to determine whether defendant is in breach of this
16  agreement and, if so, to permit the government to withdraw from the plea agreement.

17  *Id*. at 5-6.  Further, the plea agreement stated the parties "stipulate[d] and agree[d] to [a]

18  sentence of 120 months of imprisonment."  *Id*. at 4.  The magistrate judge presiding over the

19  change of plea hearing found the plea was knowingly, intelligently, and voluntarily entered

20  into; the magistrate judge recommended this Court accept the plea of guilty.

21  The pre-sentence report ("PSR") calculated Villa-Luna's subtotal criminal history

22  points as zero, with a corresponding criminal history category of I under the United States

23  Sentencing Guidelines ("USSG").  PSR (Doc. 309, ¶¶ 70, 71).  The PSR stated:

24  The applicable guideline imprisonment range is 135 to 168 months.  Under Rule
    11(c)(1)(C), the written plea agreement stipulates to a prison sentence of 120 months,
25  which includes a four-level downward departure under USSG §5K3.1, and USSG
    §5K2.0.
26
27  *Id*. at ¶ 106.  At sentencing, this Court found 120 months was a sufficient sanction and

28  reasonable sentence considering all of the statutory factors of sentencing and sentenced Villa-

1    Luna outside of the guideline range to a variance; Villa-Luna was sentenced to the stipulated

2    term of 120 months of imprisonment.

3         On December 15, 2023, Villa-Luna filed his Motion for Compassionate Release

4    and/or Reduction of Sentence (Doc. 574).  Villa-Luna's Motion requests compassionate

5    release for asserted extraordinary reasons and relief under the amended and revised

6    guidelines for zero criminal history points.  The government has filed an opposition (Doc.

7    578) and the United States Probation Office has filed a Memorandum RE:   Retroactive

8    Criminal History Amendment of Chapter Four Status Points and Zero Point Offenders -

9    Ineligible (Doc. 579).

10

11    *Waiver of Right to Request Modification*

12         The plea agreement included a provision that Villa-Luna waived the right to file a

13    motion for modification of sentence, including under 18 U.S.C. § 3582(c).  The Ninth Circuit

14    has recognized such waiver may be enforced if "(1) the language of the waiver encompasses

15    the relief sought, and (2) the waiver is knowingly and voluntarily made."  *United States v.*

16    *Malone*, 503 F. App'x 499, 500 (9th Cir. 2012), *quoting  United States v. Charles*, 581 F.3d

17    927, 931 (9th Cir.2009), *internal quotation marks omitted*.  Villa-Luna has not shown any

18    reason why the waiver should not be enforced.  The Court finds, therefore, Villa-Luna has

19    waived the right request a reduction of sentence based on the amended guidelines regarding

20    zero criminal history points.

21         However, as to Villa-Luna's request for compassionate release, it was not possible for

22    Villa-Luna to know of the reasons for compassionate release at the time of the entry of the

23    plea of guilty.  Indeed, he could not "'knowingly' waive a right that does not yet exist."

24    *United States v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812214, at *1 (N.D. Cal. Apr.

25    9, 2020); *see also* U.S. Department of Justice, Department Policy on Compassionate Release

26    Waivers in Plea Agreements, https://www.justice.gov/oip/file/1212266/dl?inline= (March

27    11, 2022) (last accessed March 18, 2024) ("[P]rosecutors should not, as a part of a plea

28

agreement, require defendants to waive: (1) the general right to file a compassionate release motion; (2) the right to file a second or successive such motion; or (3) the right to appeal the denial of a compassionate release.  If a defendant has already entered a plea and his or her plea agreement included a waiver provision of the type just described, prosecutors should decline to enforce the waiver.).  The Court finds Villa-Luna has not waived his right to request compassionate release.

*USSG Amendment 821*

Even if Villa-Luna had not waived this claim, he would nonetheless not be entitled to relief.  A judgment of conviction that includes a sentence of imprisonment may not be modified by a district court except in limited circumstances.  18 U.S.C. § 3582(b).  This section establishes an exception to the general rule of finality.  *Dillon v. United States*, 560 U.S. 817, 824 (2010).  The statute provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).  Under this provision, the Court must undertake a two-step process to determine whether a final sentence should be modified based on a sentencing range that has been lowered by the Sentencing Commission.

The Court must first determine if a retroactive amendment to the USSG lowered a defendant's guideline range and whether a reduction is consistent with the applicable policy statements.  *Dillon*, 560 U.S. at 826.  The Court must then consider the § 3553(a) factors to determine if it will exercise its discretion to reduce that defendant's sentence.  However, 18 U.S.C. § 3582(c)(2) does not authorize a reduction in a defendant's term of imprisonment as not consistent with the policy statement if an "amendment . . . does not have the effect of lowering the defendant's applicable guideline range."  USSG 1B1.10(a)(2)(B); *see also* USSG 1B1.10, Application Note 1.

Amendment 821 to the USSG took effect November 1, 2023, and applies retroactively.  *See* Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 60534 (Sept. 1, 2023); Amendment 821, United States. Sentencing Commission, https://www.ussc.gov/guidelines/amendment/821 (last accessed March 18, 2024). Amendment 821 is bifurcated into Parts A and B.

Part A of Amendment 821 limits the criminal history impact of "status points" under USSG. § 4A1.1. Specifically, with regard to such "status points, a defendant who committed the instant offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," previously received two additional criminal history points.  Amendment 821 amends § 4A1.1 to eliminate such status points for any defendant who otherwise has six or fewer criminal history points and apply one point, instead of two, for defendants who otherwise present seven or more criminal history points.  Villa-Luna is not eligible for a sentence reduction under Part A because the application of Amendment 821 does not have the effect of lowering his guideline range.

"Part B, Subpart 1 of the amendment provides a two-level reduction in the offense level for certain zero-point offenders—that is, defendants with no criminal history whose offenses meet the guideline's criteria."  *United States v. Mariscal-Sanabia*, No. 219CR00251GMNNJK6, 2024 WL 841094, at *3 (D. Nev. Feb. 27, 2024), *quoting United States v. Diaz-Diaz*, No. CR19-0187-JCC, 2023 WL 9040636, at *1 (W.D. Wash. Dec. 29, 2023).  However, to receive such an adjustment, a defendant must meet all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

USSG § 4C1.1(a).

In this case, a four-level enhancement under USSG §3B1.1(a) was added because Villa-Luna was "an organizer  or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]"  PSR (Doc. 309, ¶ 61); *see also* Memorandum RE:  Retroactive Criminal History Amendment of Chapter Four Status Points and Zero Point Offenders - Ineligible (Doc. 579)..  Indeed, during sentencing, this Court, finding the PSR accurately described the offense conduct and adopting those facts, identified Villa-Luna as the leader of the drug trafficking organization.  Villa-Luna, therefore, does not meet the criteria set forth in USSG § 4C1.1(a)(10) and is not eligible for relief.

*Compassionate Release*

The government argues Villa-Luna cannot use 18 U.S.C. § 3582(c)(2) to litigate sentencing issues unrelated to the application of Amendment 821.  However, the Court views those discussions by Villa-Luna as not only addressing the 18 U.S.C. § 3553(a) factors as required by 18 U.S.C. § 3582(c)(2) and *Dillon*, but as support for his request for compassionate release.

In enacting the First Step Act, the U.S. Congress amended 18 U.S.C.§ 3582(c)(1)(A) to "improv[e] application of compassionate release." 164 Cong. Rec. H10346, H10362 (Dec. 20, 2018).  The Act includes a provision that a sentence may be reduced for "extraordinary

and compelling reasons[.]"   18 U.S.C. § 3582(c)(1)(A)(i).   A defendant may move for compassionate release where he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . [or where there has been a] "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).   Additionally, district courts are granted broad discretion in determining whether to grant relief.   *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020), *citation omitted*. However, the court's discretion is controlled by the court considering " whether 'extraordinary and compelling reasons warrant' a sentence reduction[,] . . . whether a reduction would be 'consistent with applicable policy statements issued by the Sentencing Commission[,]' . . . [and]   consider[ing] and weigh[ing] the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted 'under the particular circumstances of the case.'"   *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022), *citations omitted*

The statute clearly imposes an administrative exhaustion requirement before seeking review by a district court.   As another court summarized:

> The amended statute allows a defendant to file a motion for compassionate release upon the earlier of two dates.  First, a defendant can file a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." *Id*. Second, a defendant can file a motion upon "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility." *Id*.  Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of her facility before filing in court. *See, e.g., United States v. Solis*, No. CR 16-015-CG-MU, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019) (denying request because defendant did not request compassionate release from Bureau of Prisons); *United States v. Dowlings*, No. CR413-171, 2019 WL 4803280, at *1 (S.D. Ga. Sept. 30, 2019).

*United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019).

Villa-Luna "bears the burden of showing that he exhausted his administrative rights with the BOP before filing his compassionate-release motion." *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020), *citations omitted*. Although his motion includes reference to the requirement of exhausting administrative

1    remedies, Villa-Luna has not shown that he has exhausted or made any effort to exhaust his

2    administrative remedies.  Under these circumstances, the Court finds Villa-Luna has failed

3    to meet his burden to show his has exhausted his administrative remedies.  "In light of the

4    mandatory language of the statute,[ this Court lacks] authority to address [Villa-Luna's]

5    motion.  *United States v. LaFromboise*, 849 F. App'x 199 (9th Cir. 2021), *citation and*

6    *footnote omitted*.  The Court finds Villa-Luna is not entitled to compassionate release.

7          Accordingly, IT IS ORDERED:

8          1.    The Motion for Compassionate Release and/or Reduction of Sentence (Doc.

9    574) is DENIED.

10         2.    The Clerk of Court shall mail a copy of this Order to Villa-Luna at the

11   following address:

12                     Placido Villa-Luna # 81829-408
                       USP - Atlanta
13                     P. O. Box 150160
                       Atlanta, GA  30315
14
15         DATED this 22nd day of March, 2024.

16

17                                _____
                                       Cindy K. Jorgenson
18                                  United States District Judge

19

20

21

22

23

24

25

26

27

28